UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAMARA S. FRAZIER, individually, and on behalf of other similarly situated consumers,<br><br>      Plaintiff,<br><br>    vs.<br><br>EQUIFAX INFORMATION SERVICES LLC; SELECT PORTFOLIO SERVICING, INC.,<br><br>      Defendants. | No. 1:22-cv-05597<br><br>FIRST AMENDED COMPLAINT |

Plaintiff Tamara S. Frazier hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages arising from Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action as the transaction over which suit is brought arose in Chicago.

**PARTIES**

3. Plaintiff is a natural person who at all relevant times has resided in Chicago, Illinois.

4. Defendant, Equifax Information Services, LLC ("Equifax"), is a business entity that regularly conducts business in Chicago with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency," as

defined in 15 U.S.C. § 1681a(F) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

5. Defendant, Select Portfolio Servicing, Inc. ("SPS"), is a Florida corporation located at 10401 Deerwood Park Bv. Jacksonville, Florida 32256. SPS regularly conducts business in Illinois. SPS is a furnisher of information to the credit agencies as defined in 15 U.S.C. § 1681s-2.

## FACTUAL STATEMENT

6. On or about July 2006, Plaintiff incurred a mortgage obligation. SPS serviced Plaintiff's mortgage account #2770***.

7. Over time, Plaintiff had difficulty with the account, and went delinquent.

8. On or about late 2015 or early 2016, Plaintiff entered into a short sale, and settled the account for less than the full balance.

9. After that short sale, Plaintiff no longer had any continuing obligation on the debt.

10. In or around September 2020, Plaintiff reviewed her Equifax report and learned that Equifax was reporting Plaintiff as late on her SPS account.

11. Credit reports generally have a number of different data fields where various pieces of information are listed. This information includes items such as the current status of an account, balance, date account opened, etc. Credit reports also provide a month-by-month historical reporting grid. This status report grid keeps track of a consumers payment history month-by-month for a period going back up to seven years.

12. For instance, the payment history grid may appear like this when the account is paid each month from February 2018 and onward:

2

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2019 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2018 | ⋈ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2017 | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ |
| 2016 | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ |
| 2015 | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ | ⋈ |

✓ Paid on Time    **30** 30 Days Past Due    **60** 60 Days Past Due    **90** 90 Days Past Due    **120** 120 Days Past Due
**150** 150 Days Past Due    **180** 180 Days Past Due    **V** Voluntary Surrender    **F** Foreclosure    **C** Collection Account
**CO** Charge-Off    **B** Included in Bankruptcy    **R** Repossession    **TN** Too New to Rate    ⋈ No Data Available

13. However, when a consumer is late during a specific historical month, the report will indicate for each given month that the consumer is late, a commensurate historical late status.

14. The accuracy of the historical payment month-by-month grid is important. Creditors make lending decisions based on the consumer's past payment history. For instance, where a consumer's payment history includes a 90 day late within the historical 12 months, the consumer will no longer be eligible for an FHA mortgage loan. *See* HUD Single Family Housing Policy Handbook 4000.1.

15. Since 2016, Plaintiff has had no obligation to SPS. Accordingly, it would be improper to report Plaintiff as late at any point after 2016.

16. Despite this, SPS specifically reported Plaintiff as having been 120 days late in June 2020 as reported within the image:

3

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2020 | XXXX | XXXX | XXXX | XXXX | XXXX | **120** | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 2019 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |

17. But Plaintiff was not 120 days late in June 2020 and SPS/Equifax's reporting of Plaintiff as late was patently false and misleading.

18. Plaintiff disputed the incorrect late reporting in September 2020.

19. Equifax received the dispute, and forwarded it to SPS to conduct an investigation.

20. SPS failed to conduct a reasonable investigation. In response, SPS failed to follow industry guidance on how to remove erroneous late payment history, and verified that Plaintiff's account should continue reporting the inaccurate historical late in June 2020.

21. Not only this, but during the course of SPS's investigation, due to its failure to adhere to the industry standard, SPS also advised Equifax to report Plaintiff with a 120 late payment in September of 2020.

22. Equifax also failed to conduct a reasonable investigation. Equifax knew the account had been settled in full since 2016 but nonetheless allowed SPS to continue to report Plaintiff as making late payments in both June 2020 and September 2020.

23. Over time, SPS and Equifax continued reporting Plaintiff as late years after Plaintiff could have been late. For instance, in a February 2022 report, Equifax, as a result of its own failure to maintain reasonable credit reporting procedures, as well as SPS's improper reporting, listed Plaintiff as 120 days late on a payment during the month of November 2021.

## CLASS ACTION ALLEGATIONS

### The Class

24. Plaintiff brings this as a class action. Plaintiff seeks to represent a class for purposes of liability and statutory damages only. Plaintiff does not seek actual damages for the classes.

25. Plaintiff seeks certification of the following classes, initially defined as follows:

> Class A (against Equifax): All natural persons residing within the United States, beginning five years prior to the filing of this Complaint, for whom Equifax credit reported late payment history after the account had already been paid.
>
> Class B (against Equifax): All natural persons residing within the United States, whose Equifax credit reports reported late payment history after the account had already been paid, for whom Equifax received a dispute, and for whom Equifax continued to report, after reinvestigation of said dispute, late payment history after the account had already been paid.
>
> Class C (against Equifax and SPS): All natural persons residing within the United States, whose Equifax credit reports reported late payment history after the account had already been paid, for whom SPS received a dispute, and for whom SPS verified to Equifax that said late payment history should remain after the account had already been paid.

### Numerosity

26. Upon information and belief, the actions complained of here have occurred for hundreds, if not thousands, of consumers throughout the United States, each of which violates the FCRA. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

27. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from the records of Defendants. This class is particularly ascertainable given the fact that the nature of the claim is obvious on the face of any credit report.

### Common Questions of Law and Fact

28. There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. These common questions of law and fact include, without limitation: (i) whether Equifax violated various provisions of the FCRA; (ii)

5

whether the Plaintiff and the Classes have been injured by the conduct of Defendants; (iii) whether the Plaintiff and the Classes have sustained damages and are entitled to restitution as a result of Defendants wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and (iv) whether the Plaintiff and the Classes are entitled to declaratory and/or injunctive relief.

## Typicality

29. The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Classes defined in this complaint have claims arising out of the common uniform course of conduct complained of herein: Plaintiff and each member of the class have obviously inaccurate late payments on their credit files. Accordingly, Plaintiff's claims are typical of the claims of the Classes, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Classes.

## Protecting the Interests of the Class Members

30. Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

31. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

## Proceeding Via Class Action is Superior and Advisable

32. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.

33. The members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

6

34. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

35. Certification of a class is appropriate in that the questions of law and fact common to members of the Plaintiff's Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

36. Certification of a class is appropriate in that prosecuting separate actions against any of the named Defendants concerning their failure to maintain adequate policies to comply with the FCRA could result in inconsistent or varying adjudications with respect to individual class members, and would result in adjudications that would impair or impede their ability to protect their interests.

37. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues.

38. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

39. Absent a class action, the members of the Classes will continue to suffer losses borne from Defendants' breaches of Class members' statutorily protected rights as well as monetary damages, thus allowing and enabling Defendants' conduct to proceed and harm consumers.

40. Defendants have acted, and will act, on grounds generally applicable to the Classes, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY EQUIFAX

41. Plaintiff repeats, realleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

42. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

43. Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).

44. Equifax negligently and willfully failed to reinvestigate Plaintiff's disputes in violation of 15 U.S.C. § 1681i.

45. As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit report and credit worthiness.

46. Equifax's conduct, action and inaction was willful, rendering each liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT II
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY SPS

47.     Plaintiff repeats, realleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

48.     At all times pertinent hereto, SPS was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

49.     SPS willfully and negligently supplied Equifax with information about Plaintiff that was false, misleading, and inaccurate.

50.     After being informed of these errors, SPS negligently and willfully failed to conduct a reasonable investigation, in violation of 15 U.S.C. § 1681s-2(b).

51.     Specifically, by allowing inaccurate historical late payments to report years after knowing the account had been paid, SPS failed to fix the errors after being notified of the reporting error.

52.     As a direct and proximate cause of SPS's failure to perform its duties under the FCRA, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit report and credit worthiness.

53.     SPS's conduct, action and inaction was willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, SPS was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Tamara S. Frazier, respectfully requests that this Court do the following for the benefit of Plaintiff:

        A. Certify the class described herein and appoint Plaintiff as Lead Plaintiff, and Plaintiff's Counsel as Lead Counsel;

        B. Enter judgment against Defendants for punitive and statutory damages pursuant to the FCRA;

C. Enter judgment against Defendants for actual damages pursuant to the FCRA;

D. Award costs and reasonable attorneys' fees;

E. Grant such other and further relief as may be just and proper.

Dated this 19th of December 2022.

Respectfully Submitted,

/s/ Daniel Zemel
Daniel Zemel, Esq.
ZEMEL LAW, LLC
660 Broadway
Paterson, NJ 07514
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2022, a true and correct copy of the foregoing document was sent to Defendant's counsel of record via email.

*/s/ Daniel Zemel*
Daniel Zemel, Esq.
**Zemel Law, LLC**